IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

CASSELL L. BROWN,

       Defendant.

Cv. No. 07-2309-STA/egb
Cr. No. 02-20477-(JDB)STA

---

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING MOTION FOR RULING AS MOOT
(DOCKET ENTRY 8)
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On May 2, 2007, Defendant Cassell L. Brown, Bureau of Prisons inmate registration number 15884-076, an inmate at the Federal Prison Camp in Millington, Tennessee, filed a motion pursuant to 28 U.S.C. § 2255. (Docket Entry ("D.E.") 1.)  On June 6, 2008, the Court directed the United States to respond to the motion. (D.E. 3.)  On June 16, 2008, the United States filed a response.  On July 28, 2008, Defendant filed a traverse. (D.E. 6.) On July 15, 2010, Defendant filed a motion requesting that the Court render a determination on the motion to vacate. (D.E. 8.)

I. PROCEDURAL HISTORY

On November 20, 2002, a federal grand jury returned a three count indictment against Cassell Brown and Lisa Davis, charging

Brown in two counts of the indictment with conspiring to possess cocaine with the intent to distribute, in violation of 21 U.S.C. § 846 (count one), and possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1)(count two). (United States v. Brown, No. 02-20447, D.E. 1.)  On June 12, 2003, Brown pled guilty to count two before United States District Court Judge J. Daniel Breen. (Id., D.E. 62, D.E. 92.)   Judge Breen conducted a sentencing hearing on January 29, 2004, and sentenced Brown to one hundred fifty-one (151) months imprisonment, along with a three year term of supervised release. (Id., D.E. 78, D.E. 87.) Count one was dismissed upon motion of the United States. Judgment was entered on February 2, 2004. (Id., D.E. 79.)

Defendant appealed his sentence. (Id., D.E. 80.) The Sixth Circuit Court of Appeals vacated Brown's sentence and remanded for further consideration under United States v. Booker, 543 U.S. 220(2005). (United States v. Brown, No. 04-5174, Id., D.E. 93.) At the resentencing hearing, Judge Breen again sentenced Brown to one hundred fifty-one (151) months. (Id., D.E. 97, D.E. 104.) The amended judgment was entered on September 1, 2005. (Id., D.E. 98.) Defendant appealed contending his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. (Id., D.E. 99.)  The Sixth Circuit Court of Appeals held that his claim under the Eighth Amendment was without merit and affirmed his sentence. (United States v. Brown, No. 05-6472, Id., D.E. 105.)

On May 2, 2007, Defendant filed this motion to vacate, alleging:

His guilty plea was involuntary based upon:

(1)   The trial court's failure to inform him of the applicability of the career offender guidelines during the change of plea proceedings;

(2)   Trial counsel's ineffective assistance by:

    (a)   failing to inform Brown that he could be sentenced as a career offender;

    (b)   failing to inform Brown that his sentence could be affected by relevant conduct; e.g., other drug seizures;

    (c)   refusing to communicate regarding issues available for appeal;

    (d)   failing to object to the lack of proof of prior convictions used at sentencing.

## II. ANALYSIS

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56 (1985). At the plea hearing in this case, the Court conducted an exhaustive interrogation of Defendant to ensure that he was guilty and that there was an adequate factual basis for the plea. The Court fully inquired into the validity of Brown's plea when it was entered, including his voluntary and willing waiver of his rights, as required by Rule 11. The plea colloquy complied with Rule 11 in every respect. See Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986)(court's inquiry on § 2255 challenge to a guilty plea should focus on compliance with Rule 11). Brown cannot now attempt to contradict the statements he made during the plea hearing.

3

Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 74 (1977).

In complying with Rule 11, Judge Breen engaged Brown in a colloquy, which included the following:

| | |
|---|---|
| THE COURT: | All right. Mr. Brown, as I stated, I've been apprised that you wish to change your plea to a plea of guilty as to Count 2 of the indictment; is that correct, sir? |
| BROWN: | Yes, sir. |
| THE COURT: | All right. And now, Mr. Brown, before I accept your plea, I'm going to ask you some questions to ensure that the plea is a valid one. If you don't understand the questions I ask you or wish to confer with your attorney at any time, you let me know that, all right? |
| BROWN: | Yes, sir. |
| THE COURT: | All right. Now, Mr. Brown, how old are you, sir? |
| BROWN: | 35. |
| THE COURT: | And how far did you go in school? |
| BROWN: | 12th grade. |
| THE COURT: | Now, have you taken any type of medication or drugs or any alcoholic beverages before coming here today? |
| BROWN: | No, sir. |
| THE COURT: | Do you know what we are doing here today? |
| BROWN: | Yes, sir. |
| THE COURT: | Now, have you had an opportunity to discuss with Mr. Settle, in your discussion of this matter with him, what you are doing today, sir? |

4

BROWN:          Yes, sir.

THE COURT:      Are you satisfied with his representation of you in this case?

BROWN:          Yes, sir.

THE COURT:      Now, Mr. Brown, do you understand that under the constitution and laws of the United States, that you are entitled to a trial by jury on the charges in the indictment?

BROWN:          Yes, sir.

THE COURT:      Do you also understand that at any trial, that you would be presumed to be innocent, and the government would have to prove that you were guilty by competent evidence beyond a reasonable doubt?

BROWN:          Yes, sir.

THE COURT:      You also understand that at any trial, the government would have to put on witnesses here in the court room in your presence, and your attorney could cross-examine those witnesses, could object to any evidence the government offered, and could offer evidence on your behalf?

BROWN:          Yes, sir.

THE COURT:      Do you also understand that at any trial you would have the right to testify, if you wish to do so, but you also would have a right not to testify, if you decided not to testify in this case, that that could not be used against you?

BROWN:          Yes, sir.

THE COURT:      Now do you also understand if you plead guilty and I accept your plea you will be giving up your right to a trial and the other rights that I've just gone over and will also be giving up your right to appeal your conviction; do you understand that, sir?

BROWN:          Yes, sir.

THE COURT:      Now do you also understand that there would not be a trial upon your plea of guilty, that I would then sentence you after considering a presentence report?

BROWN:          Yes, sir.

THE COURT:      Now that I've gone over those rights with you, Mr. Brown, is it still your intention to enter a plea of guilty to Count 2 of the indictment?

BROWN:          Yes, sir.

THE COURT:      Now, Mr. Brown, have you been provided a copy of the indictment, sir?

BROWN:          Yes, sir.

THE COURT:      Have you had a chance to read it and discuss it with your attorney?

BROWN:          Yes, sir.

THE COURT:      Now, let me just go over it with you again. Count 2 of the indictment reads that on or about February the 26th of 2002 in the Western District of Tennessee, that you, along with another individual, did unlawfully, knowingly and intentionally possess with intent to distribute, cause the possession with intent to distribute and did distribute cocaine, a controlled substance as classified by Title 21, United States Code Section 812 as a Schedule II controlled substance in violation of 21 United States Code Section 841(a)(1). In other words, you are being charged with the fact that on that date, February 26th of 2002, that you and Ms. Davis did unlawfully, knowingly and intentionally possess with the intent to distribute or caused the distribution and did distribute this cocaine which is a controlled substance under that – in violation of that statute. Do you understand that, sir?

BROWN:          Yes, sir.

THE COURT:      Now, also, I want to advise you that the potential penalty for violation of that section is not more than 20 years in prison, up to a $1 million fine or both, plus up to

6

three years supervised release together with a mandatory special assessment of $100. Do you understand the possible penalties involved, sir?

BROWN:          Yes, sir.

THE COURT:      Now, Mr. Brown, do you understand that any sentence that you might receive in this matter would not be - or would be without parole in this case; do you understand that, sir?

BROWN:          Yes, sir.

THE COURT:      With respect to the period of supervised release that I just mentioned to you, there would be a period of supervision after your term of incarceration, and if you violate the conditions of your supervised release, you could receive additional time for - that could result in additional time in prison up to the length of the supervised release period, do you understand that, sir?

BROWN:          Yes, sir.

THE COURT:      Now, has anyone threatened you or tried to force you in any way to plead guilty, sir?

GOODE:          No, sir.

THE COURT:      And the court has received a plea agreement. Did you review and sign this plea agreement, sir?

BROWN:          Yes, sir.

THE COURT:      And have you entered into the plea agreement freely and voluntarily?

BROWN:          Yes, sir.

THE COURT:      Now, Mr. Brown, the plea agreement, some of what's contained here is repetition of some other rights and information that I'm providing to you today, but I'm going to go over with you some of the other aspects of the plea agreement. Of course you indicated you would be pleading guilty to Count 2 of the indictment, and the United States would agree to move for dismissal of Count 1 at the

7

|  |  |
|---|---|
|  | sentencing. I don't think - Count 3 I think only applies to Ms. Davis, if I'm not mistaken. |
| AUSA PARKER: | That's correct. |
| THE COURT: | Of course, if you will recognize, as I have already mentioned to you about what potential sentence is imposed here and that we talked about the sentencing guidelines, which I'll go over with you in just a few minutes, the government indicates at least part of its agreement that, provided that you continue to demonstrate your recognition and acceptance of your personal responsibility under the sentencing guidelines, would not oppose you receiving a sentence at the lower end of the applicable guideline range. You understand those aspects, but I want to make sure that you understand those are not binding on the court. In other words, if the government made any type of motion for an acceptance of responsibility which might reduce your potential sentence or their recommendation that you receive some lower sentence, that that purely is a recommendation, and the court is not bound by that. Do you understand that? |
| BROWN: | Yes, sir. |
| THE COURT: | If the court did not accept the recommendation of the government, do you understand that would not allow you to withdraw your plea in this matter? |
| BROWN: | Yes, sir. |
| THE COURT: | The other matter is that of course you would be allowed to argue any mitigating circumstances, you would be allowed to address the court at sentencing, certainly that would be permissible. I think just basically indicates the government, this only binds the U.S. Attorney's Office here in the Western District of Tennessee and that this is basically the entire agreement. Is that your understanding of the agreement, sir? |
| BROWN: | Yes, sir. |

THE COURT:     Now, Mr. Brown, has your attorney discussed with you the application of the sentencing guidelines in this matter?

BROWN:         Yes, sir.

THE COURT:     Do you understand that the court, in determining what the appropriate guideline range would be, that you basically would be sentenced within that range in virtually all circumstances, and I'll talk about some of the exceptions, and generally they have to be within that, do you understand that, sir?

BROWN:         Yes, sir.

THE COURT:     As I mentioned in the plea agreement, one area, one aspect that the court could consider to go outside the guideline range would be for what is called a substantial assistance motion, sometimes referred to as a 5K1 motion. I don't know whether that's going to be presented in this case. That would be something for the government to do, but that's something that it would be up to the court as to whether or not to accept such a motion, if it did accept that motion, as to how far to deviate from the guideline range, if the court did accept such a motion; do you understand that, sir?

BROWN:         Yes, sir.

THE COURT:     And, again, you would not be able to withdraw your plea if the government made the motion and the court didn't deviate from - what you thought might be the case; do you understand that, sir?

BROWN:         Yes, sir.

THE COURT:     Now you could be sentenced outside the guideline range is there were aggravating circumstances that were not considered in developing the guidelines in this case. That would permit the court to go above the guideline range. And the court could also go below the guideline range if there were mitigating circumstances not considered in developing the guideline range. So I mean the court could have that variance depending on

9

|              | the circumstances; do you understand that, sir? |
|---|---|
| BROWN: | Yes, sir. |
| THE COURT: | Also, I've advised you that you cannot appeal your conviction, you would be waiving your right to appeal your conviction, but you would have the right to appeal any dispute about what guideline ranges might apply; do you understand that, sir? |
| BROWN: | Yes, sir. |
| THE COURT: | Okay. And, again, the government could also appeal if it went below the guideline range based upon mitigating circumstances, and certainly you could appeal if the court went above the guideline range; do you understand that, sir? |
| BROWN: | Yes, sir. |
| THE COURT: | Now other than the conversation you've had with your lawyer about what guideline range may apply, Mr. Brown, has anyone made a promise or prediction to you about what your sentence will be if you plead guilty? |
| BROWN: | No, sir. |
| THE COURT: | All right. Mr. Parker, what would be the government's proof had the matter gone to trial, sir? |
| AUSA PARKER: | Your Honor, had this matter proceeded to trial, the proof would have shown that in February 2002, the Shelby County Sheriff's Office here in the Western District of Tennessee conducted undercover operations that led first to the arrest of Lisa Davis and second to the arrest of Cassell Brown. As to Lisa Davis, Your Honor, on February 26, 2002, officers had a confidential informant who purchased drugs from Ms. Davis. She arrived at the agreed upon location here in the Western District of Tennessee. A take-down signal was given. Ms. Davis tried to evade arrest. She threw some cocaine out the window. She was ultimately arrested. Officers picked up the drugs that she had thrown out. She later |

10

agreed to cooperate, provided information that
she had purchased cocaine from Mr. Brown about
three or four days prior, and he was a
supplier of hers. She agreed to cooperate and
made a call to Mr. Brown in the presence of
officers that evening of February 26th. She
ordered essentially 9 ounces of cocaine, which
is one-quarter of a kilogram of cocaine. They
agreed to meet at the K-Mart locate don Austin
Peay Highway here in the Western District of
Tennessee. Mr. Brown showed up as expected.
Officers were conducting surveillance at the
time they saw his vehicle arrive. Another
take-down signal was given. Mr. Brown was
arrested. Officers searched his vehicle, and
this was just in the early morning hours just
after midnight, the 26th, rolling into the
27th of February, 2002. And officers found a
package located under the back seat of Mr.
Brown's vehicle. The package contained
cocaine. It weighed approximately 250.8 grams.
That was the net weight of the cocaine. It was
sent to the TBI lab and was found to in fact
be cocaine. And, in essence, Your Honor,
that's what the proof would have been had the
matter gone to trial.

THE COURT:      Mr. Brown, having heard the statements of the
                government's representative, is this basically
                correct as to your involvement in this matter,
                sir?

COUNSEL:        Your Honor, Mr. Brown understands, but I would
                state to the court those essentially would
                have been the facts reserving Mr. Brown's
                right at sentencing to discuss any quantities
                for sentencing purposes, Your Honor.

THE COURT:      All right, sir. Otherwise, that's basically
                your understanding, Mr. Brown, is that right,
                sir?

BROWN:          Yes, sir.

THE COURT:      All right. Mr. Brown, the court has advised
                you of your right to a trial and your other
                rights in connection with this matter. You
                have indicated that you are voluntarily
                pleading guilty, and you've acknowledged your
                guilt, and you do plead guilty to Count 2 of
                the indictment; is that correct, sir?

11

BROWN:          Yes, sir.

THE COURT:      Mr. Brown, I'm going to accept your plea based upon your statements, based upon the factual basis that's been presented by the government, and I will enter a judgment of guilty based upon the plea to Count 2 of the indictment. Ms. Flagg, when will this matter be set for sentencing, please?

CLERK:          Tuesday, September 30th at 1:30.

THE COURT:      All right. Is Mr. Brown's bond situation at the present time, what is Mr. Brown's -

AUSA PARKER:    Your Honor, he's currently on bond, and we would have no objection to his remaining on that bond.

THE COURT:      All right. Mr. Brown, the court, based upon the recommendation of the U.S. Attorney's Officer, will allow you to remain on the present bond. You are still under the same conditions you've always been, so any reporting or other compliance or other matters that are set forth in the bond that you need to comply with you need to continue to do so.

BROWN:          Yes, sir.

THE COURT:      All right. Mr. Brown, do you have any questions about what I've been over with you, sir?

BROWN:          No, sir.

THE COURT:      Mr. Settle, anything else form your standpoint?

COUNSEL:        Your Honor, forgive me, I didn't get the time on September 30th.

THE COURT:      I think 1:30.

COUNSEL:        1:30.

THE COURT:      And, Mr. Parker, anything else from you?

AUSA PARKER:    No, Your Honor. Thank you.

THE COURT:      Anything else, Mr. Settle?

12

COUNSEL:          Nothing, Your Honor. Thank you.

THE COURT:       You all are excused. Thank you.

(Cr. D.E. 92; Change of Plea Transcript, hereinafter referred to as C.P., at 3-16.)

The fact that a defendant, at the time he enters his guilty plea, does not know the precise sentence he will receive does not mean that the plea was "unknowing." United States v. Stephens, 906 F.2d 251, 254 (6th Cir. 1990). A defendant's subjective hope of a lesser sentence is unavailing. "Courts naturally look with a jaundiced eye upon any defendant who seeks to withdraw a guilty plea after sentencing on the ground that he expected a lighter sentence." United States v. Crusco, 536 F2d 21, 24 (3rd Cir. 1976). Brown was specifically advised in open court that the exact guideline range would be calculated in the presentence report and that until then, it would be impossible for the Court or counsel to know exactly what the guideline range would be. Brown indicated that he understood this.  Brown was specifically questioned about counsel's representation and Brown indicated he was satisfied with counsel's representation and had no complaints.

Although Defendant claims that his counsel was "ineffective" and that therefore his plea was not "voluntary", the Sixth Circuit Court of Appeals held in Ramos v. Rogers, 170 F.3d 560 (6th Cir. 1999) that "the trial court's proper plea colloquy cured any misunderstanding he may have had about the consequences of his guilty plea." See also Baker v. United States, 781 F.2d 85, 91 (6th Cir. 1985)(a "defendant's plea agreement consists of the terms

13

revealed in open court"). "Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 2004)(pointing out that "[t]he purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at that hearing.").

The United States Supreme Court has held that:

> A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The entrance of a "guilty plea means that all possible non-jurisdiction, pre-plea errors have been waived." United States v. Ormsby, 252 F.3d 844, 848 (6th Cir. 2001); United States v. Pickett, 941 F.2d 411, 416-17 (6th Cir. 1991)("[B]ecause a guilty plea bars any subsequent non-jurisdictional attack on the conviction, his failure to enter a conditional guilty plea prevents him from raising his argument.."); United States v. Bahhur, 200 F.3d 917, 923 (6th Cir. 2000). The government has a fundamental interest in the finality of guilty pleas. Hill v. Lockhart, 474 U.S. 42, 58 (1985).

By voluntarily pleading guilty, Defendant acknowledged that he admitted the factual basis for the prosecution's case against him. He cannot now "invalidate" his guilty plea by making a self-serving

14

claim that his counsel was ineffective, particularly when the record shows he was fully informed in open court about the consequences of his plea and fully admitted that the factual basis was true and correct. Moreover, the record fully reflects that Brown was fully aware that no particular sentence could be promised and that the Court would determine the final sentence. Defendant did not attempt to withdraw his guilty plea at any point in the proceedings in the district court, either before or after reviewing the pre-sentence report. Brown entered a knowing and voluntary guilty plea.

Despite the record establishing that Brown entered a valid guilty plea, he contends that the ineffective assistance of counsel rendered his plea involuntary. Strickland v. Washington, 466 U.S. 668, 687 (1984), establishes the standard for an ineffective assistance claim.  The Defendant must show:

> 1.   deficient performance by counsel; and
> 2.   prejudice to the defendant from the deficient performance.

Id. at 687.  To demonstrate prejudice in the course of a conviction entered on a guilty plea, a movant must "show that ehre is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 42, 59 (1985).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.  In analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a

> fair trial.  Absent some effect of challenged conduct on
> the reliability of the trial process, the Sixth Amendment
> guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  "Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."  Lockhart v. Fretwell, 506 U.S. at 369.  In the context of sentencing, the Court looks to whether the result of the sentencing proceeding was unfair or unreliable.  Id. at 371.

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness.  Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992).  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."  Strickland, 466 U.S. at 697.  In evaluating an ineffective assistance claim, the Court should not second guess trial counsel's tactical decisions.  Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983).  If a reviewing court can determine lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  Id. at 697.  See also United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993).

<u>Issues 1, 2(a) and 2(d)</u>

Brown contends that both the Court and counsel failed to advise him that he would be sentenced as a career offender.[1] He also contends that counsel failed to object to the lack of proof of his prior convictions at sentencing.  The United States responds that the record established that Brown did not plead guilty based on a promise of a specific sentence. Brown was correctly advised by Judge Breen that the maximum prison term provided by the statute under which he pled guilty was twenty years. <u>See</u> 21 U.S.C. § 841(a)(1)(C).[2]  Brown confirmed that he had read and signed the plea agreement and that, other than conversations with his attorney, no one had made a promise or prediction to him about what his sentence would be. (Cr. D.E. 92; C.P., at 8, 12.)

Although the Court did not specifically address the applicability of the career offender guideline during the plea proceedings, Brown received the presentence report prior to sentencing. He did not attempt to withdraw his plea upon learning of the recommendation that he be sentenced as a career offender before either the first sentencing or resentencing hearing. Brown was given the opportunity to address the Court at the first

---

[1]     The Court construes issue 1 as a claim that counsel was ineffective for failing to raise issue 1 on direct appeal because of Brown's contention in issue 2(c), that counsel failed to communicate with him regarding the issues to be raised on direct appeal.

[2]     Brown alleges that the Court misadvised him that the maximum statutory penalty was twenty (20) years imprisonment. Brown's conflates the applicable guidelines range with the sentence provided by the statute. The Court's statement was correct.

17

sentencing hearing and he declined. (D.E. 87, transcript of First Sentencing Hearing, hereinafter S.H.I at 14.)

At the second sentencing hearing, counsel requested that the Court consider the fact that Brown did not have an extensive criminal history, although he did have a previous drug felony and a manslaughter conviction. (D.E. 104, transcript of Second Sentencing Hearing, hereinafter S.H.II at 6-10.)  Brown stated in open court that he was not put on notice of the career offender applicability before entering his guilty plea. (Id. at 29.) Judge Breen correctly advised Brown that there was no requirement that he be charged in the indictment with being a career offender and that those offenses did not have to be proven to a jury.[3] (Id. at 29-30.)  Brown asked the Court to forgive him for his actions, but did not seek to withdraw his guilty plea. (Id. at 29.)  Brown does not dispute that he had the requisite two qualifying convictions.

Under these circumstances, Brown's conviction would not have been overturned on direct appeal had the trial court's failure specifically to address the applicability of the career offender provision been raised by counsel. See United States v. Herrara, 375 F.3d 399, 407 (6th Cir. 2004); see also United States v. Hodge, 259 F.3d 549, 553-54 (6th Cir. 2001) (guilty plea not involuntary due to district court's failure to estimate loss; "[T]he district court need not identify a particular sentencing range under the Guidelines when accepting a guilty plea as long as the defendant is

---

[3]     The holding in Almendarez-Torres v. United States, 530 U.S. 224 (1998), that a prior conviction does not have to be proven to a jury has not been overruled. See e.g., United States v. Hutchins, 2009 WL 1789474, *4 (6th Cir. June 25, 2009).

made aware of the maximum potential sentence and the fact that the Guidelines operate to create a sentencing range under the statutory maximum within which the district court may exercise its discretion."); cf. El-Nobani v. United States, 287 F.3d 417, 421-22 (6th Cir. 2002) (guilty plea not involuntary because defendant not informed he would be deported as a consequences of his guilty plea). Although this case is distinguishable from Herrara in that Brown was not specifically advised, during the Rule 11 colloquy, about the potential for a career offender enhancement, the presentence report afforded him reasonable notice that the judge would be considering the enhancement, and he was afforded the opportunity to be heard on the issue. 375 F.3d at 407; cf. Bullard v. United States, Nos. 1:03-CV-424, 1:00-CR-115, 2005 WL 1074374, at *6 (E.D. Tenn. May 4, 2005) (noting that, "unlike the statutory enhancement [under 28 U.S.C. § 851], the government need not notify a defendant of the prior convictions which will be used to deem a defendant a career offender under § 4B1.1").

Counsel had no basis for objecting to the lack of proof of Brown's prior convictions. His prior criminal record did not have to be included in the indictment or proven to a jury. The district court was entitled to rely on the facts contained in the presentence report. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Sixth Circuit has

held that Apprendi and its progeny do not preclude a district court from making the factual findings required to sentence a defendant as a career offender. United States v. Martinez, 430 F.3d 317, 343 (6th Cir. 2005) ("The career offender enhancement is based on the fact of [the defendant's] prior convictions and does not violate the Sixth Amendment."); United States v. Bradley, 400 F.3d 459, 462-63 (6th Cir. 2005) ("From Apprendi to Blakely to Booker, the Court has continued to except such factfinding from the requirements of the Sixth Amendment."); United States v. Newton, 389 F.3d 631, 639 (6th Cir. 2005), vacated on other grounds, 546 U.S. 803 (2005).[4]

Counsel had no legal basis for appealing the Court's failure to advise Brown of the applicability of the career offender guidelines during the guilty plea proceedings. Defendant fails to demonstrate that counsel had any factual or legal basis for challenging his prior convictions at sentencing. His contention that he would have gone to trial had counsel informed him the career offender guidelines were applicable is specious.  Had Brown chosen to go to trial, the career offender guidelines remained applicable and he would have lost his three point reduction for acceptance of responsibility. His resulting guideline range would have been 210-240 months imprisonment, rather than 151 to 188 months imprisonment.  Furthermore, Brown would have lost the United States' recommendation that he be sentenced at the low end of the

---

[4]    The judgment in Newton was vacated in light of Booker, and the case was remanded for a new sentencing hearing. United States v. Newton, 431 F.3d 991 (6th Cir. 2005).

applicable guideline range and his resulting sentence could have been much higher. Thus, he cannot demonstrate any prejudice from his attorney's action or inaction which affected his sentence as it relates to his career offender status. Thus, his sentence was not fundamentally unfair or unreliable, and Issues 1, 2(a) and 2(d) are without merit and are denied.

<u>Issue 2(b)</u>

Brown alleges that his attorney erroneously informed him that he would only be punished for the amount of drugs found in his vehicle. (D.E. 1 at 8-9.) The United States responds that the issue was resolved when the prosecutor agreed that the other seizure should not be considered in determining Brown's offense level and that, because Brown was determined to be a career offender, he did not suffer any prejudice because his sentence was determined by his career offender status, not the drug quantity. (D.E. 4 at 8.)

Counsel objected to the amount of drugs attributable to Defendant during the first sentencing hearing. (D.E. 87, S.H.I at 8.) The United States stipulated that Brown should not be sentenced for the amount of drugs possessed by the co-defendant. (<u>Id.</u> at 10.) The United States further stated that the extra drugs had no impact on Brown's sentence because of his career offender status. (<u>Id.</u>) In reviewing the issue during the second sentencing hearing, Judge Breen stated, "When you plug into the career offender table, you get the same result no matter which amount of cocaine is attributed to the defendant. And Mr. Parker agreed to

21

stipulate that the additional amount that was subjected [sic] to not be included, since the range - it would be the same range." (D.E. 104, SHII at 5-6.)

Brown's argument is without factual foundation. He cannot demonstrate any prejudice from counsel's representation on this issue. Thus, his sentence was not fundamentally unfair or unreliable.  Issue 2(b) is without merit and is DENIED.

<u>Issue 2(c)</u>

Brown contends that counsel "refused to communicate with Movant concerning the issues that were available to be raised on direct appeal." (D.E. 1 at 10.) He alleges that "[t]he issues Movant wanted to raise on appeal were entirely ignored by his defense counsel." (<u>Id.</u> at 11.) In this motion to vacate, Brown does not identify the issues he wished raised on appeal. He has attached as an exhibit, however, his request to the Sixth Circuit Court of Appeals seeking leave to supplement his appeal with a challenge to his career offender status.  (<u>Id.</u> at 13-14.)

The Court construes this issue as alleging that counsel should have raised the career offender issues presented in this motion to vacate on direct appeal.  As discussed above, however, the failure of counsel to raise these frivolous issues does not constitute deficient performance.  In light of <u>Lockhart</u> and <u>Strickland</u>, it is clear that Defendant cannot demonstrate any prejudice from his attorneys' performance.  Issue 2(c) is DENIED.

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28

22

U.S.C. § 2255.   See also Rule 4(b), Rules Governing Section 2255 Proceedings in the United States District Courts.   Defendant's conviction and sentence are valid and his motion is DENIED in its entirety.   The Clerk is directed to enter judgment for the Government. The motion for a determination (D.E. 8) is DENIED as MOOT.

Consideration must also be given to issues that might occur if Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

The Supreme Court has cautioned against undue limitations on the issuance of certificates of appealability:

23

> [O]ur opinion in <u>Slack</u> held that a COA does not require
> a showing that the appeal will succeed. Accordingly, a
> court of appeals should not decline the application of a
> COA merely because it believes the applicant will not
> demonstrate an entitlement to relief. The holding in
> <u>Slack</u> would mean very little if appellate review were
> denied because the prisoner did not convince a judge, or,
> for that matter, three judges, that he or she would
> prevail. It is consistent with § 2253 that a COA will
> issue in some instances where there is no certainty of
> ultimate relief. After all, when a COA is sought, the
> whole premise is that the prisoner "'has already failed
> in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>,

463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more
> than the absence of frivolity'" or the existence of mere
> "good faith" on his or her part. . . . We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and
> the case has received full consideration, that petitioner
> will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342

(cautioning courts against conflating their analysis of the merits

with the decision of whether to issue a COA; "The question is the

debatability of the underlying constitutional claim, not the

resolution of that debate.").[5]

In this case, for the reasons previously stated, the issues

raised by Defendant are lacking in substantive merit and,

therefore, he cannot present a question of some substance about

---

[5]     The Supreme Court also emphasized that "[o]ur holding should not be
misconstrued as directing that a COA always must issue." <u>Id.</u> at 337. Instead, the
COA requirement implements a system of "differential treatment of those appeals
deserving of attention from those that plainly do not." <u>Id.</u>

24

which reasonable jurists could differ. The Court therefore DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal in forma pauperis is DENIED. If Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to

proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 23rd day of July, 2010.

**s/ S.Thomas Anderson__**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

26